SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| CONNIE WILHELM, a citizen and qualified elector of Maricopa County, ROBERT A. SHANK, a citizen and qualified elector of Maricopa County, and EDWARD P. TACZANOWSKY, a citizen and qualified elector of Pima County, | ) Arizona Supreme Court<br>) No. CV-08-0269-AP/EL<br>)<br>) Maricopa County<br>) Superior Court<br>) No. CV2008-017368<br>)<br>) |
| Plaintiffs/Appellants, | ) **O P I N I O N**<br>) |
| v. | )<br>)<br>) |
| JANICE K. BREWER, in her official capacity as Secretary of State for the State of Arizona; and THE BOARDS OF SUPERVISORS OF APACHE, COCHISE, COCONINO, GILA, GRAHAM, GREENLEE, LA PAZ, MARICOPA, MOHAVE, NAVAJO, PIMA, PINAL, SANTA CRUZ, YAVAPAI, and YUMA COUNTIES, in their official capacities, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants/Appellees, | )<br>) |
| and | )<br>) |
| HOMEOWNERS' BILL OF RIGHTS COMMITTEE, an unincorporated association, | )<br>)<br>)<br>) |
| Real Party in Interest. | )<br>) |
| _____ | ) |

Appeal from the Superior Court in Maricopa County
The Honorable Sam J. Myers, Judge

**Affirmed**
_____

GAMMAGE & BURNHAM, PLC                                    Phoenix
     By   Lisa T. Hauser
          Gregory J. Gnepper
          Heather J. Boysel
Attorneys for Connie Wilhelm, Robert A. Shank, and
Edward P. Taczanowsky

TERRY GODDARD, ARIZONA ATTORNEY GENERAL                   Phoenix
     By   Tanja K. Shipman, Assistant Attorney General
          Barbara A. Bailey, Assistant Attorney General
Attorneys for Janice K. Brewer

TERENCE C. HANCE, COCONINO COUNTY ATTORNEY             Flagstaff
     By   Jean E. Wilcox, Deputy County Attorney
Attorneys for Coconino County Board of Supervisors

BARBARA LAWALL, PIMA COUNTY ATTORNEY                      Tucson
     By   Daniel S. Jurkowitz, Deputy County Attorney
Attorneys for Pima County Board of Supervisors

DAVIS, COWELL & BOWE, LLP                       San Francisco, CA
     By   Andrew J. Kahn
          Elizabeth A. Lawrence
Attorneys for Homeowners' Bill of Rights Committee
_____

**R Y A N**, Justice

¶1      Connie Wilhelm and others ("Wilhelm") challenged the petition form circulated by the Homeowners' Bill of Rights Committee ("proponents") in an action under Arizona Revised Statute ("A.R.S.") section 19-122(C) (2002).  The petition proposed an initiative measure called the Homeowners' Bill of Rights.  Wilhelm sought an order barring the Secretary of State from placing the measure on the 2008 general election ballot. After a hearing, a superior court judge rejected Wilhelm's claims.  Wilhelm timely appealed, and we affirmed the superior court's judgment by order.  This opinion explains our order.  We

2

have jurisdiction under Article 6, Section 5(3), of the Arizona Constitution and A.R.S. § 19-122(C).

**I**

**A**

¶2	When considering challenges to the form of initiative petitions, Arizona courts follow a rule of "substantial compliance." *Feldmeier v. Watson (Citizens for Responsible Growth)*, 211 Ariz. 444, 447-48, ¶¶ 14-15, 123 P.3d 180, 183-84 (2005). The rule recognizes that before errors in petition formalities will be found to bar a measure from the ballot, a court must determine whether the petition, considered "as a whole," "fulfills the purpose of the relevant statutory or constitutional requirements, despite a lack of strict or technical compliance." *Id.* Our analysis generally considers several factors, "including the nature of the constitutional or statutory requirements, the extent to which the petitions differ from the requirements, and the purpose of the requirements." *Id.*

¶3	Wilhelm contends that this petition is not legally sufficient "(1) because it has *no* title, (2) its text is not full and correct and (3) its petition summary is invalid." Wilhelm also asks this Court to reconsider the "substantial compliance" standard. We decline to reconsider our standard of review for initiative petitions and conclude that the petition

3

substantially complied with the statutory and constitutional requirements.

**B**

¶4      We begin with the claim that the measure includes no title because the measure's name neither precedes its text, nor is centered to indicate it is, in fact, a title.  The superior court concluded that the petition has a title that complies with Arizona law.

¶5      The Arizona Constitution and a statute require that when an initiative petition is circulated for signatures, a copy of the measure including its "title and text" must be included. Ariz. Const. art. 4, pt. 1, § 1(9) ("Each sheet containing petitioners' signatures shall be attached to a full and correct copy of the title and text of the measure so proposed . . . ."); A.R.S. § 19-112(B) ("The signature sheets shall be attached at all times during circulation to a full and correct copy of the title and text of the measure or constitutional amendment proposed or referred by the petition.").

¶6      We have held that the title and text provision merely requires "*some* title and *some* text." *Meyers v. Bayless*, 192 Ariz. 376, 378, ¶ 10, 965 P.2d 768, 770 (1998) (quoting *Barth v. White*, 40 Ariz. 548, 556, 14 P.2d 743, 746 (1932)).  We further stated that a "title should precede the measure." *Id.* at 378, ¶¶ 11-12, 965 P.2d at 770.  Although the title in *Meyers*

appeared in the substantive text of the initiative, we nonetheless found substantial compliance with the constitutional requirement. *Id.* We explained that a provision that identified "Article 2" as the "CITIZENS CLEAN ELECTIONS ACT" qualified as a title because it was offset from the other text and because there was only one article, avoiding any confusion. *Id.* at ¶ 12.

¶7     Section 1 of the petition here bears the heading of "Title" and provides, "This act may be cited as the 'Homeowners' Bill of Rights.'" Thus, the "title" is clearly denominated as such and is contained in its own section. We conclude that the "title" in this petition complies with the requirements of Article 4, Part 1, Section 1(9) and A.R.S. § 19-112(B).

¶8     Wilhelm, however, suggests that the Court's review of the title requirement has "eroded" since *Barth* was decided. She contends that our cases interpreting Article 4, Part 2, Section 13, the single-subject rule, should dictate the result in this case.

¶9     In contrast to Article 4, Part 1, Section 1(9), the single-subject rule expressly requires that acts "embrace but one subject" to be included in a title, and provisions not encompassed in the title are "void." Art. 4, pt. 2, § 13. Article 4, Part 1, Section 1(9), on the other hand, has no equivalent provisions. *Cf. Feldmeier*, 211 Ariz. at 447, ¶ 13,

5

123 P.3d at 183 ("[I]f the Constitution expressly and explicitly makes any departure fatal, the initiative cannot be placed on the ballot.") (internal quotation marks, ellipsis, and citation omitted). Further, even in applying the explicit charge of the single-subject rule, our interpretation is not "narrowly technical," and thus "we construe legislation liberally in favor of its constitutionality." *Clean Elections Inst., Inc. v. Brewer*, 209 Ariz. 241, 243, ¶ 4, 99 P.3d 570, 572 (2004) (internal quotation marks and citations omitted). Consequently, we are not persuaded by Wilhelm's argument.

**C**

¶**10**        In 1991, the Legislature amended the initiative statutes to require that the petition form include text of "no more than one hundred words" describing "the principal provisions of the proposed measure . . . ." 1991 Ariz. Sess. Laws, ch. 1, § 6 (3d Spec. Sess.) (codified and amended at A.R.S. § 19-102(A)). The statute also requires that the petition contain the following notice:

> [T]his is only a description of the proposed measure . . . prepared by the sponsor of the measure. It may not include every provision contained in the measure. Before signing, make sure the title and text of the measure are attached. You have the right to read or examine the title and text before signing.

A.R.S. § 19-102(A). Here the petition included a summary and the required notice. But Wilhelm claims that the summary in

6

this case is fatally defective because it fails to refer to one provision of the proposed measure.

¶11     The summary stated the following:

> Ten-year warranty on new homes. Right to demand correction of construction defects or compensation. Homeowners participate in selecting contractors to do repair work. They can sue if no agreement with the builder. No liability for builders' attorney and expert fees but homeowner can recover these costs. Homeowners can sometimes recover compensatory and consequential damages. Disclosure of builders' relationships with financial institutions. Model homes must reflect what is actually for sale. Right to cancel within 100 days and get back most of the deposit. Prohibiting sellers' agents from participating in false mortgage applications.

The summary did not refer to a proposed amendment to A.R.S. § 12-552, which proposes extending the statute of repose for certain actions concerning "real property" from eight to ten years.

¶12     Wilhelm concedes that the legislature did not intend that every feature of a measure be included in the 100-word description. Nevertheless, Wilhelm maintains that without the repose term the summary here is misleading both on its face and in the context of the measure's broader presentation. The summary plainly omits any reference to the extension of the statute of repose, which Wilhelm contends may affect not only

7

home construction, but also other property litigation.[1] Further, petition signers who read the summary would have to read the entire measure to find the statute of repose provision in the very last section. This is particularly important, Wilhelm argues, because although traditionally statutory sections are presented in numerical order, the framers of this measure placed the proposed amendment to A.R.S. § 12-552 at the back, not the front, of the initiative text. Wilhelm argues that by omitting the section from the summary and placing it in the back of the text, the proponents sought to mislead voters.

¶13      In rejecting Wilhelm's arguments, the superior court relied on our decision in *Kromko v. Superior Court (Miller)*, 168 Ariz. 51, 811 P.2d 12 (1991). In that case, the text of the measure under review included short titles that were not specifically called for by statute. *Id.* at 57-59, 811 P.2d at 18-20. We concluded that the short titles were accurate, if incomplete, and noted that "[w]e cannot say that a title's failure to describe every aspect of a proposed measure always creates the degree of fraud, confusion, and unfairness sufficient to invalidate the petition upon which the title

---

[1]      We do not address what A.R.S § 12-552 would mean if the measure is approved by the voters and becomes law. *Cf*. *Winkle v. City of Tucson*, 190 Ariz. 413, 415, 949 P.2d 502, 504 (1997) ("Voter initiatives, part and parcel of the legislative process, receive the same judicial deference as proposals before the state legislature — courts are powerless to determine their substantive validity unless and until they are adopted.").

8

rests." *Id.* at 60, 811 P.2d at 21. Further, any fear of fraud was mitigated by the fact that the measure itself was available to voters for inspection and the omitted information was not contrary to the thrust of the measure. *Id.*

¶14 We agree with the superior court. The omission of the proposed extension of the statute of repose in the proponents' description of the measure was not fraudulent and did not create confusion or mislead. The proponents included the warning required by the legislature and informed signers that the summary had been prepared by initiative supporters and advised them to review the entire measure. Thus, potential signers were warned that the summary description may not be complete or unbiased.

¶15 Substantively, the proposed amendment regarding the statute of repose is consistent with the ten-year warranty that both the summary and the text highlight. In this context, the order of the statutory provisions does not create fatal falsity under the standard declared in *Kromko*. *Id.* at 59, 811 P.2d at 20 (agreeing with criticism of short titles that "contain[] either untrue representations designed to defraud potential signatories, or highly inflammatory language calculated to incite partisan rage"). Neither the initiative measure nor the summary improperly obscures the proposed two-year extension to

the statute of repose.[2]

**D**

**¶16**     Wilhelm also claims that the petition is defective because part of the initiative text was not properly capitalized to indicate newly proposed language.  Section 19-112(B) requires that the text of an initiative provision "indicate material added or new material by printing the letters of the material in capital letters."  In this case, some limited material was not capitalized, including "a caption and an incomplete sentence."

**¶17**     The language in question was presented in the following way:

> 12-1365.02. <u>Applicability; claims and actions</u>

> A purchaser may bring an action against a seller for violation of section 12-1365.01 and shall be entitled to recover in such action ANY OR ALL OF THE FOLLOWING RELIEF.

> (a)  INJUNCTIVE OR OTHER EQUITABLE RELIEF TO RESTRAIN ANY VIOLATION OF SECTION 12-1365.01;
> (b)  RESCISSION OF ANY CONTRACT TO PURCHASE A DWELLING MADE IN VIOLATION OF SECTION 12-1365.01;
> (c)  ANY ACTUAL DAMAGES CAUSED BY ANY VIOLATION OF SECTION 12-1365.01;
> (d)  COMPENSATORY DAMAGES FOR WILLFUL VIOLATION OF SECTION 12-1365.01; AND
> (e)  REASONABLE ATTORNEY FEES, REASONABLE EXPERT WITNESS FEES AND TAXABLE COSTS.

---

[2]     In *Kromko*, the plaintiff submitted evidence that signers were misled.  *Id.* at 59, 811 P.2d at 20.  In contrast, the superior court here stated that "[p]laintiffs submitted no evidence that any voter was misled or confused by" any of the issues raised.

10

Wilhelm contends that because the title and the first portion of the provision are not capitalized, § 19-112(B) was violated and therefore the petition was fatally defective. The superior court concluded that the error was not fatal because the context of the provisions made clear that the language not capitalized is new.

¶18    The purpose of A.R.S. § 19-112(B) is to call attention to amended and added language. Any failure of the present petition not to comply is not fatal for two reasons. First, the provision with regard to capitalization is less critical to the statute's purpose when entirely new provisions, rather than the amendment of existing provisions, are proposed. Second, the context confirms that "[v]iewed as a whole" these provisions envision new laws, regardless of the typography. *See Feldmeier*, 211 Ariz. at 449, ¶ 25, 123 P.3d at 185. The non-capitalized language derives its meaning from the capitalized sections preceding it. Consequently, the failure to capitalize the language did not cause the measure to fail to substantially comply with the statutory requirements.

**E**

¶19    Finally, we decline Wilhelm's invitation to revisit our standard of substantial compliance review for initiative petitions. Wilhelm argues that this Court's standard for evaluating initiative petitions has eroded such that the

11

requirements to place a measure before voters are "near extinction." As a result, she claims, voters have become too empowered, the process has been abused, and some support restricting the process. We do not believe, however, that the possibility that some people may favor modifying the constitutional and statutory laws for initiatives is a sufficient reason for us to abandon our long-established standard of substantial compliance under the laws as they now exist.

**II**

¶20     Based on the forgoing, we affirm the superior court's judgment.

_____
Michael D. Ryan, Justice


CONCURRING:


_____
Ruth V. McGregor, Chief Justice


_____
Rebecca White Berch, Vice Chief Justice


_____
Andrew D. Hurwitz, Justice


_____
W. Scott Bales, Justice